UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

JOHNNY R. HUFF,

    Plaintiff,

v.                                    Civil Action No. 3:07cv744

ATTORNEY GENERAL OF VIRGINIA, *et al.*,

    Defendants.

**MEMORANDUM OPINION**

**August 22, 2008.**  Plaintiff Johnny R. Huff, an inmate in the custody of the Virginia Department of Corrections ("VDOC") proceeding *pro se*, filed this 42 U.S.C. § 1983 action, challenging his detention beyond his mandatory parole release date.  Defendants Attorney General of Virginia ("Attorney General"), the Commonwealth of Virginia, the Virginia Parole Board Chairman, and Governor Tim Kaine have filed a Motion for Summary Judgment.  (Docket No. 7.)  Plaintiff filed a response on February 12, 2008.  (Docket No. 15.)  Plaintiff also has filed a variety of non-dispositive motions.[1]  These matters are ripe for adjudication.

**I.  Standard of Review**

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty*

---

[1] These motions include: "Motion of Presentment of New Evidence" (Docket No. 4), "Motion - Brief on Questions to Court" (Docket No. 5), "Motion for Court Certification to Specific Laws Applied - in Constitutional Questions Raised . . . Declarative Relief "Sought." (Docket No. 10), "Motion for Extension of Time" (Docket No. 17), and "Motion to Hear Oral -Arguments- Before the Court -Jury Demand-" (Docket No. 19).

*Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex,* 477 U.S. at 322-24.  These facts must be presented in the form of exhibits and sworn affidavits.  Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  *Anderson*, 477 U.S. at 255.  Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary.  *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995).  Nonetheless, the nonmoving party is entitled to have "'the credibility of his evidence as forecast assumed.'"  *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).  Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial.  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24).

## II. Findings of Fact

In accordance with Local Rule 56(B), Defendants have submitted a statement of undisputed facts, supported by the record.  Plaintiff has responded and does not dispute the facts listed by Defendants. Based on the affidavits and exhibits accompanying the briefs, the Court finds the following facts to be undisputed:

1. On June 29, 1990, the Chesterfield County Circuit Court ("Circuit Court") revoked a previously suspended sentence for taking liberties with a child and ordered Plaintiff to serve five

years of that sentence. Plaintiff served this five-year sentence with applicable good time credits from May 1, 1990, to April 7, 1993.

2. On October 2, 1990, Plaintiff was convicted of sexual battery and sentenced to a thirty-day sentence. Plaintiff served this sentence with applicable good time credits from April 7, 1993, to April 22, 1993.

3. On February 26, 1991, Plaintiff was convicted of attempted rape, indecent exposure, forcible sodomy, and four counts of aggravated sexual battery. Plaintiff was sentenced to a total of twenty-three years and six months. Plaintiff served this sentence with applicable good time credits from April 22, 1993, to December 5, 2007.

4. On or about August 2, 2007, the Virginia Parole Board ("Parole Board") notified Plaintiff that his mandatory parole release date was November 26, 2007.

5. On or about November 7, 2007, the Parole Board notified Plaintiff that, at the request of the Commitment Review Committee of Virginia's Office of Sexually Violent Predator Services ("CRC"), it was deferring his mandatory parole release date pursuant to Section 53.1-159 of the Virginia Code,[2] while assessing whether Plaintiff is a sexually violent predator.

---

[2] Section 53.1-159 of the Virginia Code states in relevant part:

> Every person who is sentenced and committed under the laws of the Commonwealth to the Department of Corrections . . . shall be released on parole by the Virginia Parole Board six months prior to his date of final release . . . .
>
> Notwithstanding the provisions of the preceding paragraph, if within thirty days of a release scheduled pursuant to this section, new information is presented to the Board which gives the Board reasonable cause to believe that the release poses a clear and present danger to the life or physical safety of any person, the Board may delay the release for up to six months to investigate the matter and to refer it to law-enforcement, mental health or other appropriate authorities for investigation and any other appropriate action by such authorities.

Va. Code § 53.1-159.

6. On November 27, 2007, the Circuit Court entered an order directing VDOC to maintain custody of Plaintiff pending resolution of his civil matter. *See Commonwealth v. Huff*, Civil Case No. CL07-2718 (Va. Cir. Ct. filed November 7, 2007).

7. On December 5, 2007, Plaintiff was administratively paroled for his criminal convictions. Plaintiff remains in VDOC custody based on his pending civil matter.

8. Plaintiff remains in custody of VDOC pursuant to the November 27, 2007 Order from the Circuit Court regarding his pending civil matter.

9. On January 9, 2008, the Circuit Court, pursuant to section 37.2-906 of the Virginia Code, conducted a hearing and found probable cause to believe that Plaintiff is a sexually violent predator. *Huff v. Commonwealth*, Civil Action No. 3:07cv691, slip op. at 3 (E.D. Va. July 7, 2008).

10. Although the trial in Plaintiff's civil commitment matter was scheduled for April 2, 2008, it appears that date has been continued. *Id.* at 3-4.

11. Neither party has provided the Court with the status of CRC's assessment of Plaintiff as a sexually violent predator.

### III. Discussion

In his Complaint, Plaintiff lists eleven arguments. Many of these arguments are redundant. Liberally construing Plaintiff's arguments, Plaintiff's claims are summarized as follows:

> Claim 1   Defendants violated Plaintiff's due process rights by detaining him past his mandatory parole release date of November 26, 2007, pursuant to Section 53.1-159 of the Virginia Code. (Arguments 2, 4, 5, 6, 7, 9, 10, and 11.)

    Claim 2    Defendants recklessly endangered Plaintiff's life by prolonging his detention and denying him access to medical care that is available to him at the Veteran's Hospital for his heart condition. (Arguments 1 and 3.)

    Claim 3    Defendants violated Plaintiff's right to be free from bills of attainder and ex post facto laws. (Argument 8.)

The Court will first consider Defendants' motion for summary judgment.

### A.    Defendants' Motion for Summary Judgment

#### 1.    Eleventh Amendment Immunity

The Eleventh Amendment bars suits against a State unless the State has waived its immunity or Congress has acted to override that immunity. An action seeking monetary damages against a state official in his or her official capacity is tantamount to a suit against the state itself. Neither a state nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003).

In this case, the Commonwealth of Virginia has not waived its immunity and is not a "person" under § 1983. To the extent that Plaintiff brings his claims against the Attorney General, the Parole Board Chairman, and Governor Kaine in their official capacities, the claims are improper. Accordingly, all claims against the Commonwealth of Virginia and against the Attorney General, the Parole Board Chairman, and Governor Kaine in their official capacities will be DISMISSED.

#### 2.    Respondeat Superior

In order to state a viable claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a

5

law of the United States. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). To the extent that Plaintiff is suing the Attorney General, the Parole Board Chairman, and Governor Kaine in their personal capacities, Plaintiff's claims fail because he does not specify how any of them personally participated in the alleged deprivation of Plaintiff's rights. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (noting that the doctrine of *respondeat superior* is inapplicable to § 1983 actions). Accordingly, all claims against the Attorney General, the Parole Board Chairman, and Governor Kaine in their personal capacities will be DISMISSED.

### 3. The Merits of Plaintiff's Claims

To the extent that Plaintiff sues the Virginia Parole Board, the Court finds that Plaintiff's claims fail. The Court will discuss each of Plaintiff's claims.

#### a. Claim One: Plaintiff's Detention

First, Plaintiff alleges that the Parole Board violated his due process rights by detaining him beyond his mandatory parole release date. In *Heck v. Humphrey*, the Supreme Court emphasized "that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." 512 U.S. 477, 486 (1994). The Supreme Court explained that permitting civil actions to be used "for that purpose would undercut the long-standing concern not to undermine the finality of criminal convictions through civil suits." *Harvey v. Horan*, 278 F.3d 370, 375 (4th Cir. 2002) (*citing Heck*, 512 U.S. at 484-86). The Supreme Court then held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the

6

> conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486-87 (internal footnote omitted). The Supreme Court then required that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

In *Edwards v. Balisok*, the Supreme Court extended *Heck* to bar § 1983 actions that do not directly challenge confinement, but instead contest procedures which necessarily imply unlawful confinement. 520 U.S. 641, 646 (1997). The principle procedural defect complained of by the inmate-litigant in *Balisok* was a biased decision-maker. *Id.* at 648. The Supreme Court concluded that such a challenge necessarily implied the invalidity of the sanction imposed by that decision-maker and thus was subject to the bar announced in *Heck*. *Id.* The Supreme Court recently summarized that *Heck* and the related cases teach that:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)- *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).

Plaintiff's complaint appears to challenge both his prolonged criminal confinement past his mandatory parole release date[3] and his current civil confinement.[4] The Court notes that the change in Plaintiff's commitment status may not be readily apparent to him because he remains incarcerated in the same detention center even though his detention flows from two distinct proceedings. Nevertheless, Plaintiff's claim regarding his criminal commitment and his civil detention are both barred by *Heck*.

### i. Criminal Commitment

Plaintiff contends that he is entitled to monetary damages and injunctive relief because he was held for nine days beyond his mandatory parole release date. Any relief based on that period of confinement would necessarily require a finding that such detention was improper. *Wilkinson*, 544 U.S. at 81-82. Thus, it is barred under *Heck* unless Plaintiff demonstrates the nine-day period was impugned or invalidated by some court or tribunal. *Heck*, 512 U.S. at 486-87. Plaintiff has not done so. Therefore, he cannot pursue his current demand for § 1983 relief on this basis.

### ii. Civil Detention

Plaintiff currently is detained pending a determination of whether he should be civilly committed as a sexually violent predator. For similar reasons as those just discussed, *Heck* bars

---

[3] Plaintiff's mandatory parole release date was November 26, 2007. Pursuant to the CRC's request, the Virginia Department of Corrections prolonged Plaintiff's detention until December 5, 2007, when Plaintiff was administratively mandatory paroled on his criminal convictions. Therefore, Plaintiff was confined nine days beyond his mandatory parole release date.

[4] Plaintiff remains in custody pursuant to the pending civil matter (case number CL07-2718).

the aspects of Plaintiff's claim that are predicated on his assertion that his civil detention is improper. *See Wilkinson*, 544 U.S. at 79 ("a § 1983 action will not lie when a state prisoner challenges 'the fact or duration of his confinement'") (*citing Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). Although *Heck* only expressly addressed challenges to criminal convictions and sentences, its standards appear applicable to Plaintiff's claim challenging his civil detention. *See Wood v. Wood El*, No. Civ.A. 05-1447 RBK, 2005 WL 1899335, at *4 (D.N.J. Aug. 5, 2005) (rejecting a § 1983 challenge to an involuntary civil commitment because the involuntary commitment had not been invalidated as required by *Heck*); *Delaney v. Comm'r of Dep't of Mental Health*, No. C.A. 92-12025-MLW, C.A. 92-12026-MLW, 1998 WL 113852, at *5 n.3 (D. Mass. Mar. 5, 1998) (noting that *Heck* and *Balisok* would bar an award of damages for unlawful civil commitment because such award "would necessarily imply the invalidity of the underlying commitment order").

Granting Plaintiff relief based on his current civil detention would necessarily invalidate that detention. *Wilkinson*, 544 U.S. at 81-82. Plaintiff also has not presented evidence that any court or tribunal has invalidated his current civil detention. *Heck*, 512 U.S. at 486-87. Rather, Plaintiff filed a federal habeas petition challenging his civil detention that was denied on July 7, 2008. *See Huff v. Commonwealth*, No. 3:07cv691 (E.D. Va. filed Nov. 6, 2007); *see also Turner v. Unknown*, Civil Action No. 7:07-cv-00531, 2007 WL 3333471, at *1 (W.D. Va. Nov. 9, 2007) (dismissing a § 2254 habeas petition challenging involuntary civil confinement because the petitioner has not exhausted his state court remedies).

In any event, it is inappropriate for the Court to address a claim that would tend to impugn an ongoing state proceeding under the abstention doctrine articulated in *Younger v.*

9

*Harris*, 401 U.S. 37 (1971). "*Younger* abstention is a doctrine requiring federal courts to refrain from interfering with ongoing state judicial proceedings that implicate important state interests." *Life Partners, Inc. v. Morrison*, 484 F.3d 284, 300 (4th Cir. 2007); *see Bellotti v. Baird*, 428 U.S. 132, 143 n.10 ("[I]t would appear that abstention may be raised by the court *sua sponte*."). The *Younger* abstention doctrine applies "to noncriminal judicial proceedings when important state interests are involved." *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 351 (4th Cir. 2005) (*citing Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

Plaintiff's civil commitment proceedings are ongoing. Therefore, Plaintiff's challenge under § 1983 to his civil detention is improper. Claim One shall be DISMISSED WITHOUT PREJUDICE.

### b. Claim Two: Denial of Medical Treatment

Plaintiff claims that Defendants are recklessly endangering his life by denying him medical treatment because of his prolonged criminal commitment or current civil commitment. In support of this claim, Plaintiff provides unsworn allegations that he is in poor health because of heart attacks, a stroke, and a spine injury, and that he needs a heart transplant. (Compl. 2-3.) Plaintiff provides no evidence supporting his contention that he needs a heart transplant or that his health otherwise has suffered because of his commitment.

In order to survive summary judgment, Plaintiff must demonstrate that the remaining defendant, the Parole Board, is acting with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). "Deliberate indifference is a very high standard-a showing of mere negligence will not meet it." *Grayson v. Peed,* 195 F.3d 692, 695

(4th Cir. 1999) (*citing Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). "Deliberate indifference requires a showing that the defendants . . . actually knew of and ignored [an inmate's] serious need for medical care." *Young v. City of Mount Ranier,* 238 F.3d 567, 575-76 (4th Cir. 2001) (*citing White ex rel. White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997)). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977). In evaluating a prisoner's complaint regarding medical care, the courts are mindful that "society does not expect that prisoners will have unqualified access to health care," or to the treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (*citing Estelle*, 429 U.S. at 103-04). Furthermore, absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less demonstrate deliberate indifference. *See Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985) (*citing Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3d Cir. 1970)).

Even assuming that the Parole Board could somehow be responsible for providing Plaintiff with appropriate medical care, Plaintiff's claim fails because Plaintiff presents no evidence that he has been denied access to medically necessary treatment. Accordingly, Claim Two will be DISMISSED.

        **c.**    **Claim Three: Ex Post Facto and Bill of Attainder**

"No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. In addition, "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1.

### i. **Ex Post Facto**

"The Ex Post Facto Clause bars enactments which, by retroactive application, increase the punishment for a crime that has already been committed." *Warren v. Baskerville*, 233 F.3d 204, 206 (4th Cir. 2000) (*citing Collins v. Youngblood*, 497 U.S. 37, 42 (1990)). "As the constitutional text makes clear, the ex post facto prohibition applies to 'laws.'" *Id.* at 207 (*citing United States v. Ellen*, 961 F.2d 462, 465 (4th Cir. 1992); *Prater v. U.S. Parole Comm'n*, 802 F.2d 948, 951 (7th Cir. 1986) (en banc) ("The constitutional prohibition against ex post facto laws . . . is directed to the legislative branch of government rather than to the other branches.")). Thus, "[a] change in an administrative policy that was in effect at the time of a criminal's underlying offenses does not run afoul of the prohibition against ex post facto laws." *Id.* (*citing Ellen*, 961 F.2d at 465).

Plaintiff fails to demonstrate any instance where a new law was used to increase his punishment. *See Garner v. Jones*, 529 U.S. 244, 250 (2000) (finding that the controlling inquiry for ex post facto analysis is whether retroactive application of the change in law creates a significant risk of increasing the measure of punishment). Rather, Va. Code § 53.1-159 is a civil commitment process and does not invoke ex post facto protections. *See Kansas v. Hendricks*, 521 U.S. 346, 370-71 (1997) (finding that because Kansas's Sexually Violent Predator Act allowed involuntary civil commitment for non-punitive reasons, the proceeding does not violate the ex post facto clause that only applies to penal statutes); *Michau v. Charleston County, S.C.*, 434 F.3d 725, 727 (4th Cir. 2006) (indicating that the plaintiff was not a "prisoner" because he was civilly, and not criminally, detained pursuant to South Carolina's Sexually Violent Predator Act). Thus, the Court finds that Plaintiff's ex post facto claim fails.

### ii.    Bill of Attainder

"A Bill of Attainder is a legislative determination of guilt which metes out punishment to named individuals." *United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997). Plaintiff argues that "[t]he Virginia Parole Board in concert with the Attorney General of Virginia has abused with malice of forethought this V[a.] Code [§] 37.1-900 and V[a.] Code [§] 53.1-900 in its use to vex, harass, punish, and torment Mr. Huff by denying him his liberty . . . ." (Return to Respt.'s Mem. in Supp. in Defense of Lawsuit 11.) Plaintiff's citations to the Virginia Code are in error because the Virginia Code does not include sections 37.1-900 or 53.1-900.[5] Plaintiff fails to direct the Court to any instance where the Virginia legislature has impermissibly meddled in his conviction or the execution of his sentence. This is true as to any repealed or existing statute, such as Virginia Code 37.2-900. Therefore, Plaintiff's bill of attainder claim fails. Claim Three will be DISMISSED.

### B.    Plaintiff's Motions

Before the Court are a variety of non-dispositive motions filed by Plaintiff. Because the Court shall grant Defendants' motion for summary judgment and dismiss the complaint, Plaintiff's motions shall be DENIED AS MOOT.

---

[5] All of Va. Code 37.1 was repealed in 2005. Va. Code 37.2-900 pertains to Civil Commitment of Sexually Violent predators.

## IV.  Conclusion

For the foregoing reasons, the Court shall GRANT Defendants' Motion for Summary Judgment.  (Docket No. 7.)  Plaintiff's motions shall be DENIED AS MOOT.  (Docket Nos. 4, 5, 10, 17, 19.)  Accordingly, the Complaint will be DISMISSED.  (Docket No. 1.)

An appropriate Order shall issue.

/s/<br>
M. Hannah Lauck<br>
United States Magistrate Judge

Richmond, Virginia  
Date:  August 26, 2008